IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT A. VOGEL | § | |
| TDCJ # 1541475, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-1971 |
| | § | |
| ASSISTANT WARDEN WAYNE, | § | |
| BREWER *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This prisoner civil rights case is before the Court on defendants Assistant

Warden Wayne Brewer, Captain James McKee, and Lieutenant Billy McCreary's

Motion for Summary Judgment [Doc. #46] supported by classification records [Doc.

# 46-1] and medical records [Doc. # 47-1]. Plaintiff Scott Vogel ("Vogel") did not

respond or request for additional time to do so.[1] Having reviewed the record and

applicable legal authorities, the Court **grants** the defendants' Motion.

## I.    FACTUAL BACKGROUND AND CLAIMS

Vogel is a Texas Department of Criminal Justice ("TDCJ") prisoner housed in

the William J. Estelle Prison Unit ("Estelle Unit"), a TDCJ Regional Medical Facility

in Huntsville, Texas. Defendants are TDCJ officials. On July 3, 2013, Vogel filed

---

[1]    Although Vogel has not responded to the defendants' motion, the Court must analyze the defendants' arguments, authorities, and supporting evidence to determine if summary judgment is warranted.

this 42 U.S.C. §1983 civil rights suit against Brewer, McKee, and McCreary, alleging violations of his Eighth Amendment rights. Vogel further alleges that McKee, and McCreary assaulted him in retaliation for exercising his rights pursuant to the First Amendment. Vogel's allegations are contained in his original complaint [Doc. # 1] and in his response to the court's order for more definite statement [Doc. # 8]. Additional information is contained in medical records provided by the defendants under seal [Doc. # 47-1] and Vogel's classification records [Doc. # 46-1]. The following is a narrative of the events leading up to the incident as well as the incident in question:

### A.     <u>Preceding Events</u>

Vogel had been housed at the TDCJ Allred Prison Unit ("Allred Unit"), located near Wichita Falls, Texas, prior to his assignment to the Estelle Unit. On March 18, 2013, Vogel's Allred Unit cellmate physically assaulted him after discovering that Vogel was a sex offender [Doc. # 8, p. 1]. Vogel asserts that he sustained multiple injuries to his head, leg, and arm injuries which required numerous staples. *Id.* The Use of Force Report and Emergency Care Record, issued March 18, 2013, corroborates Vogel's assertion about his injuries [Doc. # 46-1, pp. 32-33, 41]. The report depicts a brutal physical attack which required the guards to use two gas

canisters to force the assailant away from Vogel.[2]  *Id.*  Vogel's medical records reflect that he "suffered multiple lacerations on scalp, upper and lower extremities, fractures of his bilateral 5th fingers and traumatic right [orchiectomy - excision of the right testicle]." [Doc. # 47-1, p. 20].  Because of the seriousness of his injuries, Vogel was taken by ambulance to United Medical Regional Medical Center, a hospital in Wichita Falls, where an operation was performed to repair the orchiectomy [Doc. # 47-1, p. 20; Doc. # 46-1, at 41].  In addition, Vogel's multiple lacerations were stapled.  *Id.* Vogel was returned to the Allred Unit on the evening of March 18, 2013 [Doc. # 47-1, p. 20].  At that time, he  had splints on his left forearm and right hand and a penrose drain in his right scrotum.  *Id.*  Although Vogel's head exhibited multiple hematomas, the CT scan revealed no skull fractures or intra cranial abnormalities.  *Id.*  Vogel was also given Cipro,[3] a drug prescribed by the attending urologist.

Vogel's medical records reflect that he was given numerous other medications including codeine, an opiate used to treat pain.  *Id.* at 18.  Over the next few days, Vogel's wounds, including his traumatic right orchiectomy appeared to be healing without complication.  *Id.* at 19.  On March 27, 2013, staff at the Allred Infirmary,

2        The records suggest that Vogel's cellmate assaulted him because he was a sexual offender due to the inclusion of a lacerated scrotum among the injuries listed.

3        Cipro is used to treat bladder infections.  *See* http://www.drugs.com.

following doctor's orders, removed the staples (more than 40) from Vogel's head, arms, and legs. *Id.* at 28. On April 1, 2013, Vogel asked if he would be given Testosterone shots if he lost the other testicle. *Id.* at 11. Vogel's question troubled the attending physician because it raised the concern of whether Vogel intended to remove his other testicle. *Id.* at 12. The physician discussed the issue with an official at the mental health department. *Id.* Vogel also inquired about his fractures and complained that his right lower leg had hurt since March 18, the day his cellmate had assaulted him [Doc. # 47-1, p. 9]. Vogel was advised that an orthopedist would be consulted and an appointment was scheduled for April 4, 2013. *Id.* at 10. On or before April 25, 2013, TDCJ officials transferred Vogel to the Estelle Unit. *Id.* at 28. The transfer had been previously recommended by the Allred Unit Classification Committee in the aftermath of the assault [Doc. # 46-1, p. 29].

### B. The Alleged Assault and Retaliation by the Defendants

Vogel alleges that Captain McKee and Lieutenant McCreary assaulted him during a Unit Classification Committee [UCC] meeting at the Estelle Unit [Doc. # 8, p. 1; Doc. # 25-3, p. 3]. The UCC meeting was held on April 25, 2013, immediately after Vogel arrived at Estelle the Unit. Warden Brewer, Captain McKee, and Lieutenant McCreary were on the UCC Committee. Vogel alleges that the UCC asked him about his injuries, and he explained that his cellmate assaulted him because he

4

was a sex offender [Doc. # 8, p. 1]. Vogel then told the Committee that he was planning to file a section 1983 suit regarding the incident at the Allred Unit.[4] *Id.* at 2. McKee and McCreary responded to Vogel's statement by "attack[ing] him [and] slamming him to the ground." *Id.* Vogel contends that the defendants did this "for no other reason than expressing his 1st Amendment rights of the United States Constitution [sic]."

Vogel alleges that the staples in his head wound were dislodged and that the wounds from the Allred incident were bleeding as a result of the assault. *Id.* at 2-3. He also alleges that his ear was badly damaged which caused severe hearing loss after the assault. *Id.* at 2. Vogel further alleges that he was denied medical treatment for these injuries. *Id.* at 2-3. Finally, Vogel claims that, during the attack, Captain McKee told him, "[Y]ou ain't nothing but some sex offender anyways," and that if he filed anything defendants would put someone in his cell who would rape him. *Id.* at 2-3. Vogel seeks $15,000 in monetary damages from each defendant for the emotional distress he suffered as a result of the defendants' use of excessive force.

---

[4]     The Civil Docket for the Northern District of Texas reveals that Vogel filed a prisoner civil rights complaint against officials at the Allred Unit on March 24, 2014. The pending complaint alleges that prison officials at Allred are liable for the March 18 assault by Vogel's cellmate because they were deliberately indifferent to Vogel's serious need for protection. *Vogel v. Livingston*, No. 7:14cv0039 (N.D. Tex. 2014).

## II.    THE DEFENDANTS' ARGUMENTS AND EVIDENCE

Defendants deny that they engaged in any conduct that violated Vogel's Eighth Amendment rights or retaliated against him for exercising his First Amendment rights. Defendants argue that they are entitled to summary judgment on the basis that the records do not indicate that Vogel suffered any injuries as a result of the assault alleged to have occurred on April 25, 2013. They point out that there was no immediate grievance or request for help from Vogel after the incident.

The defendants refer to an Offender Protection Investigation ("OPI") conducted in response to Vogel's verbal request for help from Sergeant Dustin Harkness at Estelle during the evening of May 12, 2013 [Doc. # 46-1, p. 22]. Vogel called Sgt. Harkness to his cell and told him that his life was in danger because his cellmate threatened to "beat him up" if he did not move out. *Id.* After informing his superior officer of Vogel's entreaty and receiving instructions, Sgt. Harkness removed Vogel from his cell and placed him in transient status (single cell) pending the outcome of the OPI. *Id.* at 9, 22.

Lieutenant Patrick Eady conducted the OPI over the next two days and interviewed witnesses including Vogel, Cpt. McKee, and Lt. McCreary [Doc. # 46-1, pp. 3-7]. During the investigation, Vogel gave Lt. Eady a handwritten statement

alleging that, during a meeting on either April 24 or 25, 2013,[5] Cpt. McKee grabbed him by the front of his jumper and "shoved [Vogel] out of [his] office." *Id.* at 5. He also alleges that Lt. McCreary told him that the Captain was not going to get his records and then slapped him. *Id.* Vogel further stated in writing that he went to "Psych Observation" on April 26, 2013, and explained to the health providers there what happened to him at the Allred Unit on March 18, 2013.[6]

Lt. Eady also conducted an oral interview with Vogel who explained that he did not have any problems with his cellmate until May 8, 2013, when his cellmate revealed that he found out from a staff member why Vogel was in prison [Doc. # 46-1, p. 7]. Vogel denied any physical confrontations with or sexual abuse by his cellmate. *Id.* A nurse examined Vogel and found no visible signs of any injuries. *Id.* Lt. Eady found that Vogel's account to him differed from that Vogel had given to Sgt Harkness. *Id.*

---

[5]     Vogel's handwriting is difficult to decipher. The date given reads as either "4-24" or "4-25."

[6]     Vogel's medical records reflect that he was referred for a psychiatric evaluation on April 26, 2013 [Doc. 47-1, pp. 51-58]. The referral was made in response to his admission of experiencing depression and suicidal thoughts resulting from the altercation at the Allred Unit on March 18, 2013. *Id.* at 54. The psychiatric records contain no reference to any confrontation with McCreary and McKee.

Lt. Eady also interviewed Cpt. McKee and Lt. McCreary, and both denied using any force against Vogel or informing the inmate population about Vogel's offenses. *Id.* Lt. Eady found no evidence of Vogel being assaulted by the defendants in this case or evidence that Vogel had been abused by his cellmate. He also found that there was no evidence that verified Vogel's self-serving allegations of staff misconduct or indication that Vogel's life was in danger. *Id.* Lt. Eady's findings were brought before a Unit Classification Committee which recommended that no action be taken because there was no evidence to substantiate Vogel's allegations [Doc. # 46-1, p. 8].

In addition to arguing that no excessive force was used against Vogel, the defendants argue that there was no evidence to indicate that he was injured in April or May 2013, as he claims against the Estelle Officers. Defendants point to the uncontradicted medical records which indicate that Vogel's head wounds were healed and that the staples had been removed prior to the alleged assault [Doc. # 47-1, pp. 9, 28]. They also point out there is no reference in his records to any assault or injury occurring on or about April 25, 2013. Vogel has not responded to this documentary evidence.

The defendants contend that Vogel's allegations of retaliation are conclusory. They argue that there is no evidence of motivation because Vogel told the defendants he was considering filing a lawsuit regarding an event that occurred at another TDCJ

unit located more than 300 miles away from the Estelle Unit. Moreover, they contend that there is no evidence that their alleged actions had a chilling effect on Vogel's First Amendment activities.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). The Court shall grant summary judgment if "the movant shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain,* 864 F.2d 1235, 1241 (5th Cir. 1989) (quoting *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Natl. Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Mere conclusions and allegations are not summary judgment evidence and cannot be used to defeat or support a motion for summary judgment. *Topalian v. Ehrman*¸ 954 F.2d 1125, 1131 (5th Cir. 1992). To successfully oppose a motion for summary judgment, the non-movant must present specific facts showing "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc.*, v. *Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). If the non-movant fails to point out evidence opposing summary judgment, it is not the court's duty to search the record for such evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## III. <u>ANALYSIS</u>

### A. <u>Excessive Force</u>

Vogel's excessive force claims are reviewed under the standards established by the Eighth Amendment's prohibition against cruel and unusual punishment. *See Wilkins v. Gaddy*, 559 U.S. 34, 36-37 (2010); *Whitley v. Albers*, 475 U.S. 312, 318 (1986); *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). If there is a showing that force was used against Vogel, the Court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Schneider v. Kaelin*, 569 F. App'x 277, 279 (5th Cir. 2014) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In making this

determination, the Court must consider the following factors: "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response." *Id.* These factors are part of the "core judicial inquiry" but are not exclusive to other considerations in determining whether an Eighth Amendment violation has occurred. *Martin v. Seal*, 510 F. App'x 309, 312, (5th Cir. 2013) (citing *Baldwin v. Stalder,* 137 F.3d 836, 839 (5th Cir.1998)).

Vogel alleges that McKee and McCreary used excessive force against him on April 25, 2013, while Brewer watched and did nothing to stop the assault. Even viewing evidence in the light most favorable to Vogel, Vogel has not raised a genuine fact issue on two key elements of this Eighth Amendment claim.

### 1.    <u>No Use of Force</u>

If it is shown that force was used against the prisoner, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Wilkins*, 559 U.S. at 36 (2010) (quoting *Hudson,* 503 U.S. at 6). Not "every malevolent touch by a prison guard" creates an Eighth Amendment violation. *Hudson,* 503 U.S. at 9. Furthermore, "an inmate who complains of 'a push or a shove' that causes no discernible injury almost certainly

fails to state a valid excessive force claim. *Id.* at 37. Where the objective factors of an inmate's medical record show no evidence of any injuries consistent with the inmate's allegations, courts have concluded that allegations are implausible. *Wilburn v. Shane*, 193 F.3d 517, 517 (5th Cir. 1999), (citing *Wesson v. Oglesby,* 910 F.2d 278, 281-82 (5th Cir. 1990)).

In his more definite statement, Vogel claims that on April 25, 2013, McKee and McCreary slammed Vogel to the floor, badly injuring his ear, and damaging his hearing [Doc. # 8, p. 2]. He also alleges that Brewer witnessed the assault but did not intervene. Vogel specifically alleged in his more definite statement that at the time of the assault, he still had staples in his head from the March 18, 2013, assault and that the April 25 assault knocked the staples out and reinjured his head. In his amended complaint, Vogel merely alleges that McKee and McCreary grabbed him and forcibly removed him from McKee's office [Doc. # 34, p. 3]. Vogel asserts that he was denied medical care although he does not provide evidence of any injuries that required care or attention.

There is no independent evidence supporting Vogel's allegations that force was used against him, and no evidence of discernible injuries from the alleged incident. The Allred and Estelle medical records directly contradict Vogel's statements. According to the medical records, Vogel's staples were removed from his head on

March 27, 2013, nearly a month before the alleged Estelle Unit incident. [Doc. # 47-1, at 28]. The medical records also show that Vogel continued to receive medical care throughout 2013.[7] He was also treated April 26, 2013, which was immediately after the alleged assault. [Doc. # 47], at 19. Finally, according to the post-April 2013 medical records, Vogel did not exhibit any new wounds and the medical records contain no references to the alleged use of force by defendants. Vogel does not dispute the validity of the medical records. There accordingly is insufficient evidence

---

[7]  Vogel sought medical care for injuries related to the March 18, 2013, attack eight separate times through the course of 2013, and he never at any time mentioned the alleged April 25, 2013, incident. [Doc. # 47-1].

- April 26, 2013, (the day after the alleged incident) Vogel was seen for a psychiatric complaint, but made no mention of physical injuries and none were noted in the medical record. Correctional Managed Care Nursing Protocol for Psychiatric Symptoms [ Doc. # 47-1, pp. 51-58].
- On June 6, 2013, Vogel told the nurse during the intake interview that he was beaten up by a cell mate at Allred but did not mention the alleged incident at Estelle. *Id.*, at 31.
- July 9, 2013 Vogel stated he was suffering from a pain in his head and ringing in his ears "all caused by nearly being killed March 18" the day he was attacked by his Allred cellmate. *Id.* at 73.
- October 8, 2013 Vogel stated that he was beaten by his cell-mate with a fan motor and had been having major headaches, seeing spots, and hearing ringing in his ears. *Id.* at 70.
- November 5, 2013, Vogel stated he was having problems after being hit in the head back in March 18, 2013 and still had not seen anyone. *Id.* at 68.
- November 7, 2013 "I [Vogel] sent in another I-60 about my head that I have been having problems since March 18, 2013, attack from my cellie, I was never seen for this. Nov. 5, 2013 I sent another I-60 asking about that I-60." *Id.* at 64.
- Other dates referring to the March 18 incident include: Dec. 9 and Dec. 16 of 2013. *Id.* at 60 and 4.

demonstrating that Vogel suffered from use of force or injuries at the hands of the defendants. Consequently, he failed to show that defendants used excessive force against him. *Dunn v. Denk,* 79 F.3d 401, 403 (5th Cir. 1996). Accordingly, the Court concludes that there is no genuine dispute that Vogel did not suffer physical injury as a result of any alleged use of excessive force in April 2013. Defendants are therefore entitled to judgment as a matter of law on Vogel's Eighth Amendment excessive force claim.

### 2. No Injury

Even if the Court were to find that Vogel was involved in a physical confrontation with the defendants, his claim is not actionable because there is no evidence of any injury resulting from the altercation. *See Hudson*, 503 U.S. at 9. When making an excessive force claim, it is not necessary for an inmate to show that he was seriously harmed by the prison officials' actions. *Wilkins*, 559 U.S. at 37 (citing *Hudson*, 503 U.S. at 9). However, the nature and extent of the injury is a relevant factor in determining whether a guard's use of force violated an inmate's rights. *Id.* Although the prisoner need not show significant injury, he must show some injury at the hands of a custodial official. *Brown v. Lippard*, 472 F.3d 384, 386 -387 (5th Cir. 2006) ("This Circuit has found an injury insufficient to support an excessive force claim where there is *no* physical injury.") (citing *Harper v. Showers,*

174 F.3d 716, 719 (5th Cir.1999)); *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). Further, the injury must be more than *de minimis* to establish an Eighth Amendment claim. *Brown*, 472 F.3d at 386 (citing *Siglar v. Hightower,* 112 F.3d, 191, 193 (5th Cir. 1997) (physical injury alleged "must be more than de minimis, but need not be significant"; sore ear lasting three days was *de minimis*)); *Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (citing *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001)); *see also Mosley v. White,* 464 F. App'x 206, 212 (5th Cir. 2010) (guard's "poke" in the eye resulting in prisoner's abrasions, cut, temporary blindness, and infection was *de minimis*); *Gomez v. Chandler,* 163 F.3d 921, 923 (5th Cir. 1999).

In his Amended Complaint, Vogel alleges McCreary slapped him in the face on April 25, 2013 [Doc. # 34, p.3]. The medical records, including entries for April 26, 2013, provide no evidence that Vogel was injured by McCreary slapping him. Furthermore, Vogel's more serious allegations of injuries sustained in his initial complaint are, as noted above, firmly contradicted by the record. Vogel's vague and otherwise unsupported allegations of injuries at the defendants' hands are inadequate to satisfy his burden of proof in this summary judgment proceeding. *Mosley*, 464 F. App'x at 213 (citing *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996)). Due to the complete absence of any medical record reflecting any injury

occurring on April 25, 2013, the Court concludes that there is no genuine dispute of material fact as to an alleged assault by the defendants. The evidence provided does not support Vogel's claims, and his claims do not meet the threshold requirements of force and injury for bringing an Eighth Amendment excessive force claim.

## B. Retaliation

Vogel claims that McKee and McCreary assaulted him because Vogel informed the Estelle committee that he intended to file a § 1983 claim related to the Allred incident [Doc. # 8, p. 2]. "The purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights." *Morris v. Powell,* 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n.10 (1998)). To assert a retaliation claim under the First Amendment, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McFaul v. Valenzuela*, 684 F.3d 564, 578 (5th Cir. 2012) (citing *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir.1999)). Causation requires a showing that the retaliatory act would not have occurred "but for" the plaintiff's exercise of the protected conduct. *Septimus v. University of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *MacDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). An inmate must produce direct evidence of motivation

or, allege a chronology of events from which retaliation may plausibly be inferred. *Jones*, 188 F.3d at 326. Mere conclusory allegations of retaliation are insufficient. *Id.*

### 1. No Causation

Vogel has failed to meet his burden to establish the causation element of his retaliation claim. Other than Vogel's unsupported and speculative allegations, the record presents no evidence that the defendants had any real motive to retaliate against him for his alleged statement about his intent to file a § 1983 claim based on the Allred incident that involved a fight with another prisoner there. Vogel alleges that he went to a committee meeting at the Estelle Unit and was assaulted after telling the defendants that he would file a suit for what happened to him before he was transferred to Estelle [Doc. # 8, pp. 2, 3]. However, Vogel does not adequately explain why the Estelle Unit guards would react so strongly to a claim regarding a prisoner assault at another unit. *See Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004). His subjective belief that he was assaulted by correctional officials at the Estelle Unit because he mentioned that he intended to file a suit against officials at another prison unit, located more than 300 miles away, is too attenuated to establish motive on the part of the defendants. *See Shelton v. Lemons*, 486 F. App'x 395, 397 (5th Cir. 2012) (affirming district court's frivolousness dismissal of inmate's

retaliation claim based on his allegation of defendant guard's inquiry about grievances plaintiff had filed against other guards). At best, Vogel's allegations against the defendants based on a future suit against unrelated parties about an incident at a unit different and distant from the unit at which the new defendants worked is speculative and does not support a claim of retaliation. *Id.*

### 2. No Retaliatory Adverse Act

In addition to failing establish that the defendants had any real motive to retaliate against Vogel, there is no evidence that the alleged retaliatory act even occurred. Vogel claims the defendants assaulted him on April 25, 2013, either by pushing and slapping him or by throwing him on the ground. Neither account of the alleged altercations with defendants is substantiated by evidence. Defendants on the other hand, have provided undisputed medical records that lack any mention that an altercation occurred in April 2013. Without a showing of a retaliatory adverse act by the defendants against him, Vogel's retaliation claim must be dismissed. *Richard v. Martin*, 390 F. App'x 323, 325 (5th Cir. 2010) (citing *Jones*, 188 F.3d at 324-25; *Morris,* 449 F.3d 684-86).

### 3. No Chilling Effect

Apart from failing to establish the necessary elements, Vogel has failed to show that the alleged retaliation "would chill or silence a person of ordinary firmness from

future First Amendment activities." *Morris,* 449 F.3d at 685-686 (quoting *Crawford–El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc), *vacated on other grounds*, 523 U.S. 574 (1998)).   In some instances, a retaliatory act may be so inconsequential that it does not deter the protected activity.   *Id.*   In this case, Vogel alleges that the defendants assaulted him in retaliation for announcing his intent to file a civil rights complaint.   However, Vogel nevertheless filed a lawsuit against the Allred officials after the alleged incident with the defendants.   *Vogel v. Livingston*, No. 7:14cv0039 (N.D. Tex.), filed Mar. 24, 2014.   The filing of the suit against the Allred officials indicates that the alleged assault at the Estelle Unit, if one did occur, did not have a chilling effect on Vogel's exercise of his right of access to the courts. *See Izen v. Catalina,* 398 F.3d 363, 367 (5th Cir. 2005); *Johnson v. Rodriguez,* 110 F.3d 299, 310-312 (5th Cir. 1997).   Having found that Vogel has failed to prove the elements of his retaliation claim and has failed to show that the alleged retaliatory behavior has discouraged him from seeking relief in federal court, the Court concludes that the retaliation claim must be dismissed.

## C.   <u>Discovery Motions</u>

Vogel seeks discovery, insisting that defendants hold evidence that would prove his case [Docs. # 39, # 40, # 41].   In prisoner civil rights cases, qualified immunity protects government officials from unnecessary costs, including discovery associated

with civil lawsuits that have no basis. *Jacquez v. Procunier*, 801 F.2d 789,791 (5th Cir. 1986). The defendants have submitted strong documentary and other evidence showing Vogel's claim of excessive force is unsupported by evidence sufficient to support a verdict in his favor as a matter of law. Therefore, the Court will not order discovery where the record shows that the prisoner has failed to meet his burden of proof with regard to an element of the claim. *Vander Ree v. Reno*, 73. F.3d 1365, 1368-9 (5th Cir. 1996). Vogel has also failed to prove that he suffered any harm or that force was used against him, which comprise the elements of his Eighth Amendment retaliation claims, or that his basic constitutional rights were violated. The Court denies Vogel's motions for discovery and evaluates defendants' Motion for Summary Judgment based on the evidence in the record.

## IV.    <u>CONCLUSION AND ORDER</u>

For the many foregoing reasons, Vogel has failed to show that there is a genuine issue of material fact on any claim he asserts against the defendants. The Court therefore grants judgment in favor of those defendants. It is therefore

**ORDERED** that the Defendants' Motion for Summary Judgment [Doc. # 46] is **GRANTED**. It is further

**ORDERED** that the Plaintiff's Motions for Leave to File an Amended Complaint [Docs. # 33 and # 38] are **GRANTED**. It is further

**ORDERED** that Defendants' Motion to Seal Medical Records [Doc. # 45] is **GRANTED**.  It is further

**ORDERED** and all other pending motions in this case [Docs. # 35, # 39, # 40, # 41] are **DENIED as moot**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 1<u>st</u> day of **December, 2014.**


Nancy F. Atlas
United States District Judge